IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARRIS JAMES,<br><br>Plaintiff,<br><br>v.<br><br>HYATT REGENCY CHICAGO,<br><br>Defendant. | No. 09-cv-7873<br><br>Honorable Judge Milton I. Shadur<br>Magistrate Judge Morton Denlow |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Hyatt Corporation d/b/a Hyatt Regency Chicago ("Defendant" or "HRC"), by and through its attorneys, hereby submits its Memorandum In Support of its Motion for Summary Judgment:[1]

## I. INTRODUCTION

Plaintiff Carris James ("Plaintiff") is a long-term and current employee at HRC who alleges that he has been legally blind since birth. (DSF ¶ 8); (Pl.'s Comp. ¶ 17) (Doc. No. 2). Plaintiff has been employed as a steward at HRC since 1985 and performed the duties of a steward without issue for more than 20 years until April, 2007, when he needed eye surgery to repair a retinal detachment that was caused by having been punched in the face. (DSF ¶¶ 8, 16-18, 23, 26-27). This retinal detachment was surgically repaired and restored Plaintiff's vision to its original state, and Plaintiff has been back at work, performing his duties as a steward without issue, since February, 2008. (DSF ¶¶ 24-25, 63, 67-68).

Plaintiff brings claims under the Family and Medical Leave Act ("FMLA") and

---

[1] Defendant's Rule 56.1(a)(3) Statement of Undisputed Material Facts is incorporated herein by reference and cited as "(DSF ¶ ___)." The cited portions of depositions (and all exhibits) are contained in Defendant's Appendix in Support of its Motion for Summary Judgment.

| | | Defendant's Memorandum in Support of Its<br>Motion for Summary Judgment |
|---|---|---|

Americans with Disabilities Act ("ADA"), essentially alleging that HRC kept him out on leave too long. As discussed in greater detail below, all of Plaintiff's claims should be dismissed on summary judgment.

## II. SUMMARY OF MATERIAL FACTS

### A. Plaintiff Is Granted Leave For Retinal Detachment Surgery

Plaintiff had surgery to repair his retinal detachment on April 20, 2007. (DSF ¶¶ 24-25, 28). After HRC learned of this medical condition, it offered and then granted Plaintiff FMLA leave. (DSF ¶¶ 29-31). While on leave, Plaintiff presented a total of three doctor's notes, each note describing Plaintiff's ability to work differently. (DSF ¶¶ 34-36, 44-46, 50-52). The first note, on April 24, 2007, was from Plaintiff's primary treating physician, Dr. Lance Scott, and indicated that Plaintiff could return to non-specific "light duty." (DSF ¶¶ 34-35). Plaintiff did not explain what this note meant, what work restrictions, if any, he may have had, nor did the note provide any description of what kind of "light duty" Plaintiff was capable of performing or for how long he needed "light duty." (DSF ¶ 36).

Despite presenting this first note, and throughout and after Plaintiff's 12 weeks of FMLA, Plaintiff submitted a series of requests for short-term disability and other benefits in which he and Dr. Scott represented that Plaintiff could not work in any capacity. (DSF ¶¶ 37-42, 47). In August, 2007, Plaintiff presented a second note from Dr. Scott which indicated that Plaintiff could return to work on August 5, 2007, with the restriction of "visually impaired." (DSF ¶ 44). Again, Plaintiff did nothing to explain how he or his doctor believed that this "visual impair[ment]" affected his ability to do his job. (DSF ¶¶ 45-46).

Plaintiff made no other attempt to return to work until late September, 2007, when he had a different doctor – Dr. Tracy Matchinski – fax over a third note indicating that he could return to work with the restrictions of no "heavy lifting" or "excessive bending over," two key aspects

| | -2- | Defendant's Memorandum in Support of Its Motion for Summary Judgment |

of his job. (DSF ¶¶ 11-12, 50). Again, Plaintiff made no effort to explain these stated restrictions, nor to explain how these restrictions related to his retinal detachment surgery or Dr. Scott's indication that Plaintiff could return to unspecified "light duty" in May or had a unspecified "visual impair[ment]" in August. (DSF ¶ 52).

### B. Plaintiff Returns From Leave Shortly After HRC Received Information From Plaintiff's Doctor Clarifying His Work Status

After receiving the September, 2007 doctor's note, then-HRC Workers' Compensation & Safety Manager James Parsons sought clarification from Plaintiff regarding the various restrictions that had been identified by his doctors. (DSF ¶ 53). Indeed, at that point HRC had been informed, at various times, that Plaintiff needed "light duty," that he was completely unable to work, that he was restricted in some unspecified manner because of a "visual impair[ment]," and that he had lifting and bending restrictions. (DSF ¶ 54).

Plaintiff failed to respond to this request, so Mr. Parsons sent a letter in January, 2008, requesting clarification from Dr. Scott. (DSF ¶¶ 55-56). The letter enclosed information regarding Plaintiff's duties and a form evaluation for Dr. Scott to complete regarding Plaintiff's functional limitations. (Id.). HRC received Dr. Scott's completed evaluation on January 28, 2008, and then-Human Resources Director Merrick Dresnin and Plaintiff's then-supervisor Al Bozeman met with Plaintiff to discuss his doctor's evaluation and determined that Plaintiff could safely return to his position. (DSF ¶¶ 60, 62). Plaintiff returned to the same position on the same shift shortly thereafter, on February 17, 2008, and Plaintiff has been back to work without issue since his return. (DSF ¶¶ 63, 67-68).

## III. HRC'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED IN ITS ENTIRETY

### A. Standard Of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is

appropriate where the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56. The mere existence of a scintilla of evidence in support of a plaintiff's position is insufficient to withstand a motion for summary judgment; instead, there must be evidence on which a jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

### B. Plaintiff's FMLA Claims Should Be Dismissed On Summary Judgment

#### 1. Plaintiff's FMLA Interference Claim Should Be Dismissed

Courts routinely grant summary judgment on FMLA interference claims where, as here, the Plaintiff is provided with the maximum amount of FMLA leave. As the Seventh Circuit explained in de la Rama v. Ill. Dep't of Human Servs., 541 F.3d 681, 687 (7th Cir. 2008): "in light of the fact that de la Rama was permitted to take seventeen weeks of leave – five weeks more than the twelve weeks the Department was required to give her under the FMLA – we find it difficult to see how the Department interfered with her entitlement to leave at all." See also, Palao v. Fel-Pro, Inc., 117 F. Supp. 2d 764, 769 (N.D. Ill. 2000) (same).

Just like de la Rama and Palao, it is undisputed that Plaintiff took more than the maximum amount of job-protected leave mandated by the FMLA. (DSF ¶¶ 31, 42-43). Once that leave expired on or about July 13, 2007, HRC had no obligation to return Plaintiff to work under the FMLA. (DSF ¶ 42); Id. Thus, Plaintiff's interference claim cannot be based on any alleged refusal to return him to work after his FMLA expired.

To establish an FMLA interference claim, therefore, Plaintiff must demonstrate that HRC wrongfully refused to return him to work prior to the expiration of his 12 weeks of FMLA. de la Rama, 541 F.3d at 687; Palao, 117 F. Supp. 2d at 769. Plaintiff cannot make this showing, as it is undisputed that Plaintiff neither presented a release returning him to full duty within his 12

weeks of FMLA nor even attempted to obtain a release returning him to full duty during that time. (DSF ¶¶ 34-36, 38-43).[2] Instead, Plaintiff submitted a series of benefit requests indicating that he could not work in any capacity. (DSF ¶¶ 38-41). The only information Plaintiff provided HRC indicating that he could work was the April 24, 2007 note, which noted that Plaintiff could only return to non-specific "light duty." (DSF ¶¶ 34-36). HRC had no obligation under the FMLA to return Plaintiff to anything less than full duty, and thus did not interfere with any FMLA rights he may have had. See 29 C.F.R. 825.216(c); Hendricks v. Compass Group, USA, Inc., 496 F.3d 803, 805 (7th Cir. 2007) (affirming that there is no such thing as 'FMLA light duty' . . . [t]o the extent that 'light duty' is mentioned in the regulations, it is as a component of a workers' compensation program" and not an FMLA entitlement).

### 2. Plaintiff's FMLA Retaliation Claim Also Fails As A Matter Of Law

Proving intentional discrimination by the employer is essential to an FMLA retaliation claim; merely showing a denial of benefits is not enough, as this would be duplicative of a claim for FMLA interference. See, e.g., Schreiber v. Chicago Mercantile Exchange, Inc., No. 03 C 8568, 2004 U.S. Dist. LEXIS 23108, *9 (N.D. Ill. Nov. 12, 2004), attached hereto as Exhibit 1.

#### a. Plaintiff Cannot Establish A *Prima Facie* Case

Because Plaintiff does not have any direct evidence of FMLA retaliation,[3] he must proceed under the indirect method of proof and establish that he (1) exercised his rights under the FMLA, (2) was performing his job satisfactorily, (3) suffered an adverse employment action, (4) and a similarly situated employee who did not exercise his FMLA rights was treated more

---

[2] Indeed, Plaintiff has even represented to this Court and to the EEOC that the first time he was released to work, and the first time that HRC wrongfully precluded him from returning, was in August, 2007. (DSF ¶ 71).

[3] At his deposition, Plaintiff admitted that no one at HRC has mentioned anything negative about his leave, nor made any comments about Plaintiff's eye surgery, alleged legal blindness or visual limitations, since his return to work. (DSF ¶ 68).

| | -5- | Defendant's Memorandum in Support of Its Motion for Summary Judgment |

favorably. Schreiber, 2004 U.S. Dist. LEXIS 23108, *10.

HRC does not contest that Plaintiff exercised his rights under the FMLA, nor that he was performing his job satisfactorily at the time he went out on leave. (DSF ¶¶ 17, 33). Nonetheless, Plaintiff has not and cannot establish that he was treated worse than other employees who did not take FMLA leave. (DSF ¶¶ 5-7); (James Dep. 295-96). Nor can Plaintiff establish that he suffered an adverse action. Although less than clear, Plaintiff's FMLA retaliation claim appears to be based on HRC's allegedly giving Plaintiff "the appearance" that he was terminated. (See Pl.'s Comp. ¶ 49-50, 59-62). Even if true, this claim is insufficient to withstand summary judgment, because Plaintiff was returned to work in the same position he held prior to his request for FMLA leave. (DSF ¶ 63). Schofield v. Metropolitan Life Insurance Co., 252 Fed. Appx. 500, 504 (3d Cir. 2007), citing Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 531 (7th Cir. 2003) (holding that "threats" of a position change in response to FMLA leave did not constitute an adverse action).

### b. Plaintiff Cannot Establish Pretext

Even assuming, however, that Plaintiff could establish a *prima facie* case of FMLA retaliation, he cannot show that the reason he remained on leave until February, 2008 was pretextual – *i.e.*, that HRC's proffered reasons for its conduct during Plaintiff's leave are "unworthy of credence." Schreiber, 2004 U.S. Dist. Lexis 23108, *14. Indeed, Plaintiff's only evidence in support of this claim is that he "wasn't working." (James Dep. 295). This is simply insufficient to proceed on his FMLA retaliation claim.

First, Plaintiff admits that he was treated fairly throughout the time that he was offered and ultimately granted FMLA leave (DSF ¶ 33), and there is no evidence that the same people who offered him leave (Ms. Perez and Ms. Nissen) retaliated against him because he exercised the very same right they offered him only months earlier. (DSF ¶¶ 29-31). On this issue, Phelan
| | -6- | Defendant's Memorandum in Support of Its Motion for Summary Judgment |
|---|---|---|

v. City of Chicago, 226 F. Supp. 2d 914, 929-30 (N.D. Ill. 2002), is instructive. In Phelan, the Seventh Circuit held that the common actor presumption, in part, precluded the plaintiff's race discrimination claim where the same decision-maker both hired and fired the employee within 2 years. The same concept applies with equal force here, as both Ms. Perez and Ms. Nissen were responsible for offering Plaintiff leave and, in the case of Ms. Perez, was also responsible for allegedly keeping Plaintiff from returning to work. (DSF ¶¶ 29-31).

Second, Plaintiff repeatedly indicated that he could not return to work. (DSF ¶¶ 38-41, 47). Throughout the 12 weeks of his FMLA leave, Plaintiff applied and was granted short-term disability and other benefits on the basis that he was unable to work while HRC received conflicting information that Plaintiff needed non-specific "light duty." (DSF ¶¶ 34, 38-41). After his FMLA expired, HRC continued to receive conflicting information that Plaintiff incapable of working at all, was restricted in some unspecified manner because of a "visual impair[ment]," and that he had lifting and bending restrictions. (DSF ¶¶ 38-41, 47, 44, 50). Plaintiff disregarded at least one request to provide clarification of these conflicting representations, and took no other steps to return other than presenting these notes and benefit requests. (DSF ¶ 55).

Third, and in any event, HRC promptly returned Plaintiff to his same position as a steward after finally receiving the clarifying information it needed regarding Plaintiff's ability to return to work in late January, 2008. (DSF ¶¶ 60, 62-63). Plaintiff admits that he has been treated fairly and that no one has negatively referenced his leave since his return. (DSF ¶¶ 67-68). Given the above, there is no evidence of retaliation associated with the length of time Plaintiff remained on leave and Plaintiff's FMLA retaliation claim therefore fails as a matter of law. Schreiber, 2004 U.S. Dist. Lexis 23108, *14.

### 3. Plaintiff Is Not Entitled To Liquidated Damages

To the extent that the Court finds that either of Plaintiff's FMLA claims should survive summary judgment, Plaintiff cannot establish an entitlement to liquidated damages. FMLA liquidated damages are unavailable where a decision-maker acts in a good faith belief that her actions did not violate the law and where this belief was objectively reasonable. Dierlam v. Wesley Jensen Corp., 222 F. Supp. 2d 1052, 1057 (N.D. Ill. 2002) (denying liquidated damages where contested decision to pro-rate bonus was made based on good-faith belief that it was permitted). Good faith may be shown where "it was Defendant . . . who first explicitly mentioned the possibility that Plaintiff's absence may be covered under the FMLA." Dillon v. The Maryland-Nat'l Capital Park & Planning Comm'n, 382 F. Supp. 2d 777, 792 (D. Md. 2005). Here, it is undisputed that Ms. Perez and Ms. Nissen offered Plaintiff FMLA leave, and that Plaintiff provided no information that he was fully capable of returning to work until just several weeks prior to his return. (DSF ¶¶ 29-31, 33, 60, 63). It is also undisputed that Mr. Parsons and others made attempts to receive additional information from Plaintiff prior to bringing him back to work. (DSF ¶¶ 53-56). This demonstrates HRC's good faith and precludes Plaintiff's claim for liquidated damages.

### C. Summary Judgment Should Be Granted On All Of Plaintiff's ADA Claims[4]

#### 1. Plaintiff's Failure To Accommodate Claim Fails As A Matter Of Law

Plaintiff alleges that HRC discriminated against him in violation of the ADA by virtue of its alleged failure to accommodate his alleged disability. (Pl.'s Comp. ¶¶ 63-82). Like Plaintiff's other claims, his ADA claim is based on HRC's alleged failure to timely return him to

---

[4] Plaintiff's ADA claims cannot be assessed under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), as all the events complained of occurred prior to the ADAAA's effective date of January 1, 2009. (See e.g., DSF ¶ 63); See Fredricksen v. United Parcel Service, Inc., 581 F.3d 516, 521 n. 1 (7th Cir. 2009) (refusing to apply the ADAAA to acts that occurred prior to the ADAAA's effective date of January 1, 2009)

work. Id.

Here, Plaintiff's failure to accommodate claim cannot survive summary judgment for two distinct reasons. First, there is no evidence that HRC took any action against Plaintiff "but for" any actual or perceived disability. Second, and even if HRC had any obligation to accommodate a protected disability, Plaintiff failed to properly engage in the interactive process by failing to provide information to clarify the confusing statements HRC received regarding his work status.

### a. HRC Took No Action Against Plaintiff Based On An Actual Or Perceived Disability

The Seventh Circuit requires a plaintiff to demonstrate that an actual or perceived disability is the "but-for" cause of an adverse action to proceed on an ADA claim. See Serwatka v. Rockwell Automation, No. 08-4010, 2010 U.S. App. Lexis 948, *14 (7th Cir. Jan. 15, 2010) (concluding that a mixed-motive analysis is unavailable under the ADA, and vacating a jury verdict that was based on a mixed-motive finding and remanding the case to the district court to enter judgment in the defendant-employer's favor), attached hereto as Exhibit 2. In Serwatka, the court held that, despite the jury's determination that the employer's perception of the plaintiff's limitations contributed to her discharge, the plaintiff did not show that the employer's perceptions about her limitations was the "but-for" cause of her termination. Id. at *17. Without this requisite showing, the Seventh Circuit determined that the plaintiff was not entitled to relief under the ADA. Id.

### (1) HRC Did Not Take Any Action "But For" An Actual Disability

There are two separate and distinct conditions at issue in this case: (1) Plaintiff's alleged legal blindness – a condition he claims he has had since birth and thus throughout the entirety of his over 25 years of employment at HRC (See e.g., Pl.'s Comp. ¶ 17); and (2) Plaintiff's temporary retinal detachment which was caused by him being punched in the face. (DSF ¶¶ 19-

27, 66). The fact that Plaintiff's injury and claimed legal blindness both involve the same part of his body is irrelevant and should not affect this Court's analysis.

Plaintiff cannot show that HRC made any contested decision "because of" his alleged legal blindness – which, taking the facts in a light most favorable to Plaintiff, is the only condition he may have that could be considered a disability under the ADA.[5] Plaintiff's retinal detachment, and thus his need for surgery, follow-up treatment, and medical leave – all of the relevant events that form the basis of this lawsuit – were all caused by the trauma to his left eye from being struck with a fist. (See e.g., DSF ¶¶ 16-27).

On this issue, Felix v. New York City Transit Authority, 324 F.3d 102, 105 (2d Cir. 2003), is instructive. In Felix, the plaintiff sought an accommodation for a mental condition – an inability to work in a subway – that did not "directly flow" from her insomnia, a condition that the defendant conceded was a disability. Id. at 106-07. The Second Circuit held that the employer had no duty to accommodate a lesser, non-disabling, condition and reasoned: "an employer discriminates against an employee with a disability only by failing to provide a reasonable accommodation for the 'disability' . . . Other impairments that do not amount to a 'disability' as defined by 42 U.S.C. § 12102(2)(A) do not require accommodation under the ADA." See also, Groark v. City of Chicago, No. 97 C 8135, 2000 U.S. Dist. LEXIS 20487, *19 n.3 (N.D. Ill. July 19, 2000) (July 19, 2000) (dismissing ADA failure to accommodate claim because any alleged failure to accommodate was based on an injury to his left hand, and there was insufficient evidence that the injury was related to a disabling impairment to his right arm), attached hereto as Exhibit 3.

Here, Plaintiff's retinal detachment is neither a disability nor, according to Dr. Scott, is

---

[5] To be clear, HRC does not acknowledge that Plaintiff in fact suffered from "legal blindness" or a protected disability, and instead argues that this is not a genuine factual issue that must be resolved for this Motion's disposition.

there any evidence that this temporary condition was connected to his alleged legal blindness. (DSF ¶¶ 19-27, 66); See, e.g., 29 C.F.R. § 1630.2(j)(2). Thus, HRC had no obligation under the ADA to accommodate Plaintiff in this instance, and his ADA claim therefore fails. See Serwatka, 2010 U.S. App. Lexis 948, at *17.

### (2) HRC Did Not Take Any Action "But For" A Perceived Disability

Likewise, Plaintiff cannot establish that HRC "regarded" him as being disabled.[6] At most, HRC possessed FMLA paperwork and miscellaneous benefit requests that noted Plaintiff's retinal detachment and alleged legal blindness, but none of Plaintiff's supervisors or HRC's human resources staff ever believed that Plaintiff was significantly limited in any way, visual or otherwise, despite the existence of these notes in Plaintiff's file. (DSF ¶ 69). Indeed, Plaintiff admitted that he was adamant about not informing people about his alleged legal blindness. (DSF ¶ 70).

HRC's possessing information regarding James' retinal detachment or alleged legal blindness is not enough to establish a perceived disability. Rather, Plaintiff must demonstrate that HRC mistakenly believed that Plaintiff suffered from an impairment that "substantially limit[ed] one or more major life activities." See, e.g., Pennie v. UPS, 2009 U.S. Dist. LEXIS 25756, *56 (N.D. Ill. March 30, 2009) ("It is not enough . . . that UPS knew of Pennie's recurrent back injuries or diagnosis of degenerative disc disease and subsequently fired him. Under the pre-amendment ADA, Pennie must show that UPS believed he had an impairment that substantially limited him in a major life activity."), attached hereto as Exhibit 4.

---

[6] Plaintiff can also not proceed on the basis that HRC had a "record" of his disability, as there is no evidence that HRC made any contested decision relating to Plaintiff based upon any document indicating that he was "legally blind." (See, e.g., DSF ¶ 69); Sinkler v. Midwest Property Management, 209 F.3d 678, 686 (7th Cir. 2000) (affirming summary judgment on claim that plaintiff-former employee was ADA-protected where employer had a record of her impairment because there was no evidence that the defendant-employer took that record into consideration when making a contested decision).

Plaintiff cannot make this showing, particularly because he remained on leave due to HRC's lack of knowledge of his functional capabilities given the conflicting statements it had received and Plaintiff's failure to provide clarification. (See e.g., DSF ¶¶ 34-36, 38-41, 44-48).[7] Indeed, and even if the Court were to determine that Plaintiff remained on leave because HRC perceived Plaintiff as being limited in some way, Plaintiff's failure to accommodate claim still fails because Plaintiff has not and cannot demonstrate that any contested action occurred "but for" an actual or perceived disability. See, e.g., Serwatka, 2010 U.S. App. Lexis 948, at *14 (dismissing Plaintiff's ADA claim despite evidence that adverse action was motivated, in part, by Plaintiff's perceived limitations). The Seventh Circuit has explained, in a case more than ten years before Serwatka: "[m]ere awareness of the plaintiff's disability, or simply thinking about it in discriminatory terms, is not enough." Foster v. Arthur Anderson, 168 F.3d 1029, 1032 (7th Cir. 1999).

### b. Plaintiff Failed To Properly Engage In The Interactive Process

Furthermore, and even assuming that HRC had any obligation to accommodate a protected condition, Plaintiff's failure to accommodate claim still must be dismissed because Plaintiff failed to properly engage in the interactive process.[8] The interactive process is a two-way street that requires the participation of both the employee and the employer. See Adams v. Joliet Pub. Schs., No. 95 C 1054, 1997 U.S. Dist. LEXIS 5803, *16 (N.D. Ill. April 22, 1997) (holding that plaintiff's request for "light duty" was insufficient and caused a breakdown in the

---

[7] Nor can Plaintiff claim that HRC's inquiries to determine his work status demonstrate that they regarded him as disabled. See e.g., Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 704 (4th Cir. 2001) ("Haulbrook engages in impermissible . . . bootstrapping by failing to cooperate [in the interactive process], then pleading the employer's interest in determining whether and to what extent he might be disabled as a 'suspicion' of disability, and finally asserting that he satisfies the regarded-as prong.").

[8] It bears noting that there is no independent basis under the ADA for a claim that HRC failed to engage in the interactive process. Instead, such allegations are subsumed by Plaintiff's failure to accommodate claim. See, e.g., Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001).

|  | -12- | Defendant's Memorandum in Support of Its Motion for Summary Judgment |

interactive process because plaintiff failed to provide clarifying detail about his medical condition after his surgery), attached hereto as Exhibit 5. Missing information can be the cause of a breakdown in the interactive process, and "[w]here the missing information is of the type that can only be provided by one of the parties, . . . the party withholding the information may be found to have obstructed the process." Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1136 (7th Cir. 1995).

As explained above, Plaintiff did nothing more than provide a series of cryptic and conflicting doctor's notes to HRC. (DSF ¶¶ ). Plaintiff never clarified the vague nature of these notes with Ms. Perez or anyone else at HRC, nor did he take any steps to have his doctors provide any clarification. (DSF ¶¶ 36, 45-46, 52). Instead, he had his doctors and HRC continue to fill out benefit requests that were contingent upon his inability to work (DSF ¶¶ 38-41, 47), and then disregarded Mr. Parson's request to obtain clarification on his confusing set of doctors' notes. (DSF ¶¶ 55).

Under these circumstances, Plaintiff cannot blame HRC for any breakdown in the interactive process. In Steffes v. Stepan Co., 144 F.3d 1070 (7th Cir. 1998), for example, the Seventh Circuit determined that the plaintiff-former employee caused a breakdown to the interactive process where she failed to get more comprehensive assurances that she was capable of working after providing a vague set of restrictions. As the Court reasoned: "[g]iven the blanket nature of these restrictions, the obligation fell to Steffes to update or further clarify the kinds of work she could do and [her restrictions.]" Id. at 1072.

Plaintiff therefore cannot argue that his doctors' notes were sufficient participation in the interactive process, as information concerning his medical condition after his surgery is exactly the type of information which only Plaintiff could have provided. Just like Steffes and Adams,

| | -13- | Defendant's Memorandum in Support of Its Motion for Summary Judgment |

Plaintiff was in the best position to clarify any confusion that was caused by his vague and conflicting doctors' notes. Id.; Adams, 1997 U.S. Dist. LEXIS 5803, *16. He made no effort to do so, and Plaintiff therefore cannot survive summary judgment on this claim.

### 2. Plaintiff's ADA Retaliation Claim Also Fails As A Matter Of Law

In Paragraph 73 of his Complaint, Plaintiff alleges that HRC "retaliated against [him] for being legally blind by prohibiting him from returning to work until he was no longer legally blind." (Pl.'s Comp. ¶ 73). Not only does this curious claim require that Plaintiff's eventual return be based on his no longer having even an arguably protected medical condition – *i.e.*, the legal blindness he claims is permanent – it is unsupported by the evidence. To establish a *prima facie* case of ADA retaliation, Plaintiff must show "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." Mobley v. Allstate Ins. Co., 531 F.3d 539, 549 (7th Cir. 2008). Plaintiff has not established any elements of his *prima facie* case and, moreover, cannot demonstrate that any of the contested decisions in this case were pretextual for the same reasons discussed above in connection with Plaintiff's FMLA retaliation claim. See supra Sec. III.B.2.b. Consequently, summary judgment should be granted on Plaintiff's ADA retaliation claim.

### 3. Plaintiff's Claim To Punitive Damages Fails As A Matter Of Law

To prove an entitlement to punitive damages under the ADA, Plaintiff must, at a minimum, show that HRC acted discriminatorily "in the face of a perceived risk that its actions will violate federal law." Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536, 119 S.Ct. 2118 (1999). Here, and to the extent that either of Plaintiff's ADA claims survive summary judgment, there is no evidence to allow Plaintiff's claim for punitive damages to proceed given HRC's implementation of an ADA policy, Plaintiff's failures to provide information clarifying his confusing doctors' notes and, perhaps most tellingly in this context, HRC's efforts to return

Plaintiff to work prior to his filing of a Charge with the Equal Employment Opportunity Commission. (DSF ¶¶ 6, 36, 45-46, 52, 56-57).

### D. Plaintiff's Skeletal "Pattern & Practice" Claim Should Also Be Dismissed

Much like Plaintiff's ADA retaliation claim, Plaintiff makes a conclusory allegation in his Complaint that HRC "subjected [Plaintiff] to a pattern or practice of disability discrimination." (Pl.'s Comp. ¶ 80). Without even getting into the necessarily individualized inquiries that inherently frustrate an ADA pattern or practice claim, an employee must present more than anecdotal evidence that the employer engaged in a pattern or practice of discrimination to survive a motion for summary judgment. See e.g., Reeves v. FRB of Chi., 2003 U.S. Dist. LEXIS 9858, *33-34 (N.D. Ill. May 27, 2003), attached hereto as Exhibit 6. Plaintiff has presented no evidence of any "pattern or practice," despite his extensive discovery on these issues throughout this protracted litigation (See DSF ¶ 7), and this claim should therefore be dismissed on summary judgment.

## IV. CONCLUSION

Defendant Hyatt Corporation d/b/a Hyatt Regency Chicago respectfully requests that the Court grant its Motion for Summary Judgment in full and dismiss, with prejudice, the entirety of Plaintiff's Complaint.

| Adam C. Wit<br>Marissa Ross Ingley<br>Michael G. Congiu<br>LITTLER MENDELSON<br>321 North Clark Street, Suite 1000<br>Chicago, IL 60654<br>312.372.5520 | Respectfully submitted,<br><br>/s/ Michael G. Congiu<br>―――――――――――――<br>Michael G. Congiu |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2011, I electronically filed **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Joseph A. Longo, Esq.
Attorney for Plaintiff
2100 West Haven
Mount Prospect, IL 60056
Longo-Associates@sbcglobal.net

/s/ Michael G. Congiu
Michael G. Congiu